# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| AHMED KHALIFA, | Case No. |
| Plaintiff, | Judge |
| v. | Magistrate |
| PNC BANK, NATIONAL ASSOCIATION, *et al.*, | |
| Defendants. | |

## **DEFENDANTS' NOTICE OF REMOVAL**

Defendants PNC Bank, N.A. ("PNC") and Franklina Samani ("Samani"), pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, file this Notice of Removal of the above-titled action to this Court from the Franklin County Court of Common Pleas, General Division. In support of this Notice of Removal, Defendants state as follows:

## **BACKGROUND**

1. On August 2, 2022, Plaintiff Ahmed Khalifa filed an action in the Franklin County Court of Common Pleas, General Division, titled *Ahmed Khalifa v. PNC Bank, National Association and Franklina Samani*, Case No. 22-cv-005310. Plaintiff alleges claims of race and national origin discrimination under the Ohio Civil Rights Act, Ohio Rev. Code § 4112, *et seq.* (the "OCRA") against PNC, and a claim of aiding and abetting under the OCRA against Samani. Plaintiff, a PNC employee from June 2019 through his August 24, 2021 voluntary resignation from employment, alleges he experienced pay discrimination in the form of a lower "commission" percentage,[1] which caused his alleged constructive discharge. (Complaint ¶¶ 1, 7, 15; **Exhibit B**

---

[1] The "commission" about which Plaintiff complains was actually an incentive percentage he received under a PNC Incentive Pay Plan. (**Exhibit A** ¶ 4.)

(showing correct separation date of August 24, 2021).) In Count III, Plaintiff sues Samani for allegedly "aiding and abetting" the pay discrimination about which he complains.

2. PNC has not yet been served with the Complaint and Summons.

3. On or after August 8, 2022, a copy of the Complaint and Summons were delivered by U.S. Mail to the PNC Branch where Samani is employed. A true and correct copy of that packet is attached as **Exhibit C**.

4. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the Summons, Complaint, and all other pleadings, orders, papers, or exhibits now on file with the Franklin County Court of Common Pleas, General Division, are attached as **Exhibit D**.

5. This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b) because it is being filed within 30 days after Defendants' earliest receipt of a copy of an initial pleading setting forth the claims or relief upon which this action is based, and within one year of the filing of this action.

## DIVERSITY JURISDICTION

6. This action is removable under 28 U.S.C. § 1441(a) because it is a civil action over which this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). The requirements of 28 U.S.C. § 1332(a) have been met because, as detailed below, there is complete diversity of citizenship among the parties and the amount in controversy for diversity purposes exceeds $75,000.

I. **Diversity of Citizenship Exists Because Samani is Fraudulently Joined.**

    A. **Plaintiff and PNC Are Diverse Parties.**

7. Plaintiff is a resident of the State of Ohio. (Compl. ¶ 7.)

8. PNC is a national banking association, federally chartered with the Office of the Comptroller of Currency of the United States. (**Exhibit E** ¶ 1.) A national association is a citizen of the state where its main office, as set forth in its articles of association, is located. *See Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 318 (2006). PNC's main office, as set forth in its articles of association, is located in Wilmington, Delaware. (**Exhibit E** ¶ 1; **Exhibit F**.) Thus, PNC is a citizen of Delaware.

    B. **Samani Is a Sham Defendant, Fraudulently Joined to Defeat Diversity.**

9. Samani's citizenship should be disregarded because she is a sham defendant, fraudulently joined solely to defeat diversity jurisdiction; that is, she cannot be found liable as a matter of law. *See Slone v. Allstate Vehicle & Prop. Ins. Co.*, No. 2:20-CV-5344, 2021 WL 38273, at *2 (S.D. Ohio Jan. 5, 2021), *report and recommendation adopted*, No. 2:20-CV-5344, 2021 WL 201443 (S.D. Ohio Jan. 20, 2021) (observing, "[a] defendant is fraudulently joined if it is "clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law") (citing *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 432–33 (6th Cir. 2012)); *see also Harris v. Blockbuster, Inc.*, No. 1:09-CV-00362, 2009 WL 2883874, at *2 (S.D. Ohio Sept. 1, 2009) (noting a defendant is fraudulently joined if there can be "no recovery under the law of the state on the cause alleged or on the facts in view of the law") (citing *Jerome–Duncan, Inc.*, 176 F.3d 904, 907 (1994)); *Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994). Samani cannot be found liable as a matter of law, and is therefore a sham defendant for three reasons: (a) Plaintiff brings his claims against Samani under the OCRA, and the OCRA prohibits supervisor liability; (b) the OCRA prohibits a plaintiff from filing suit at all under one of the

3

statutory provisions on which Plaintiff relies to hold Samani (and PNC) liable; and (c) Plaintiff claims his incentive pay and voluntary resignation were discriminatory and Samani had nothing to do with Plaintiff's incentive pay or voluntary resignation; thus, any "aiding and abetting" claim against her fails on the merits.

*The Standard for Fraudulent Joinder Analysis*

10. When determining whether a party has been fraudulently joined, courts apply a test similar to, but "arguably even more deferential" than, the analysis applicable to a Rule 12(b)(6) motion to dismiss. *Slone*, 2021 WL 38273 at *2 (citing *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 954 (6th Cir. 2011)); *see also Casias*, 695 F.3d at 433. To determine whether Plaintiff fraudulently joined Samani, the Court must look at the allegations made at the time of this removal. *See Markins v. Southwest Airlines Co.*, No. 5:17CV793, 2017 WL 4050195 at *2 (N.D. Ohio Sept. 13, 2017) (citing *Coyne ex rel. Ohio v. American Tobacco Co.*, 183 F.3d 488, 492 (6th Cir. 1999)). The Court also "may look to material outside the pleadings for the limited purpose of determining whether there are 'undisputed facts that negate the claim.'" *Casias*, 695 F.3d at 433; *Walker*, 443 F. App'x at 955–56 (finding, "we may 'pierce the pleading' and consider summary judgment evidence, such as affidavits presented by the parties" in determining whether joinder is fraudulent ); *Kamrass v. Jefferies, LLC*, No. 17 CV 964, 2017 WL 4271829, at *5 (N.D. Ohio Sept. 26, 2017) (denying remand motion on fraudulent joinder grounds when removing party's declarations showed sham defendant was not joint employer).

*Plaintiff's Allegations Against Samani Stem Solely from Her Supervisor Status, and She Cannot Be Held Liable Under the Two Provisions of the Amended OCRA on which Plaintiff Relies.*

11. Plaintiff does not allege that Samani was his employer. (Complaint.) Rather, Plaintiff alleges: "At all relevant times, Defendant Samani had supervisory authority over [Plaintiff]. Upon information and belief, Defendant Samani was an individual responsible for,

and/or who participated in, the adverse employment action(s) against [Plaintiff]." (Complaint ¶ 9.) Further, Plaintiff states, "Samani violated R.C. 4112.02(J) and/or 4112.99 when she aided, abetted, incited, compelled, or coerced the unlawful discrimination and/or retaliation[2] against Plaintiff set forth in this Complaint." (Complaint ¶ 35.)

12. Plaintiff is not entitled to relief from Samani under either of the OCRA sections he cites because: (a) the OCRA's bar on supervisor liability precludes a claim against Samani under Ohio Rev. Code § 4112.02(j); and (b) the OCRA explicitly provides that no plaintiff may bring a civil action pursuant to Section 4112.99 of the statute.

*The OCRA Has Barred Supervisor Liability Since April 15, 2021*

13. In 2021, Ohio amended the OCRA to bar individual supervisory liability for alleged employment discrimination, harassment, and retaliation. The current, amended version of the OCRA applies here because it took effect on April 15, 2021, before Plaintiff quit his job at PNC on August 24, 2021, and before Plaintiff filed this suit on August 2, 2022. (Complaint ¶¶ 7, 15; **Exhibit B**.) *See Whitman v. International Paper Co.*, No. 5:20-CV-02781, 2021 WL 2581566, at *3, n.1 (N.D. Ohio June 23, 2021) (using employee's termination date to determine whether old or new version of statute applied). Moreover, courts have applied the OCRA's bar on supervisor liability even when the alleged discriminatory acts occurred before the statute was amended, but the plaintiff filed suit post-amendment. *See*, *e.g.*, *See Reeves v. P&E Logistics, Inc.*, No. 2:21-CV-4167, 2022 WL 899688, at *3 (S.D. Ohio Mar. 28, 2022) (dismissing claims against individual

---

[2] The inclusion of "retaliation" in the Complaint appears to be a scrivener's error because Plaintiff alleges only race and national origin discrimination claims against PNC. Samani cannot be liable for "aiding and abetting" retaliation when Plaintiff does not allege that PNC retaliated against him. *See Martcheva v. Dayton Bd. of Educ.*, 179 N.E.3d 687, 706 (Ohio Ct. App. 2021), *appeal not allowed sub nom. Martcheva v. Dayton Bd. of Educ.*, 179 N.E.3d 1291 (stating, "[w]hen a court finds that a defendant is entitled to summary judgment on the underlying discrimination and retaliation claims, 'the court must also necessarily grant summary judgment on the claim of aiding and abetting those claims'") (citing *Weinrauch v. Sherwin-Williams Co.*, No. 1:18-cv-01696, 2019 WL 3007031, at *14 (N.D. Ohio July 10, 2019)).

defendants by employee terminated on October 1, 2020 "because Ohio law prohibits individual liability for employment discrimination or retaliation").

14. Accordingly, Samani, as Plaintiff's former supervisor, cannot be held liable under the OCRA because Ohio law prohibits individual liability for employment discrimination unless the individual is also the employer, and Samani did not employ Plaintiff. *See id.* (citing Ohio Rev. Code § 4112.08). Specifically, Ohio law provides:

> [N]o person has a cause of action or claim based on an unlawful discriminatory practice relating to employment described in division (A)(24)(a) of section 4112.01 of the Revised Code against a supervisor, manager, or other employee of an employer unless that supervisor, manager, or other employee is the employer.

Ohio Rev. Code § 4112.08.[3]

*Plaintiff Has No Cause of Action Under OCRA Section 4112.99.*

15. Nor can Plaintiff pursue his claim against Samani under OCRA Section 4112.99. The OCRA provides in Section 4112.99(B): "A person is prohibited from bringing a civil action for employment discrimination under this section." Accordingly, Plaintiff cannot pursue an "aiding and abetting" claim against Samani under the current version of the OCRA. *See Norris v. G4S Secure Sols. (USA), Inc.*, No. 1:21-CV-1022, 2021 WL 3077502, at *2 (N.D. Ohio June 30, 2021) (commenting that the OCRA "now appears to foreclose non-employer supervisor liability").

---

[3] Under OCRA Section 4112.02(J), it remains unlawful for a person to "aid, abet, incite, compel, or coerce the doing of" an unlawful discriminatory practice and/or "to attempt directly or indirectly to commit any …" unlawful discriminatory acts, among other things. However, in H.B. 352, the Ohio General Assembly stated in amending the OCRA: "The General Assembly further declares its intent that individual supervisors, managers, or employees not be held liable under Chapter 4112 of the Revised Code for unlawful discriminatory practices relating to employment that are described in division (A)(24)(a) of section 4112.01 of the Revised Code, as amended by this act." H.B. 352 Section 3. OCRA Section 4112.01(A)(24)(a) defines an "unlawful discriminatory practice relating to employment" as those practices related to employment that are prohibited by Sections 4112.02(A)-(F) or (I)-(J). Here, Plaintiff alleges Samani violated OCRA Section 4112.02(J), which is squarely covered as an employment practice for which individual supervisors may not be held liable under the OCRA.

*Even if Plaintiff Could Bring an Aiding and Abetting Claim Against Samani,*
*It Would Fail on the Merits*

16. Even if the bar on supervisor liability did not apply here, Samani would not be liable, as Plaintiff fails to state a claim against her for "aiding and abetting." Under the predecessor version of the OCRA, under which supervisory liability was permitted, Samani may have been found individually liable under Section 4112 only for her own discriminatory acts. *See Nusbaum v. Apria Healthcare, Inc.*, No. 3:09 CV 2229, 2009 WL 5167766, at *2 (N.D. Ohio Dec. 18, 2009).

17. When, as here, a supervisor played no role in the alleged discriminatory decision, no colorable claim lies against them under an Ohio "aiding and abetting" cause of action. *See Nusbaum*, 2009 WL 5167766 at *2 (denying motion to remand based on fraudulent joinder of supervisor who "is not alleged to have committed any discriminatory acts or acts of harassment against Plaintiff or anyone else"); *see also Terry v. Central Transp., Inc.*, No. 1:09 CV 2432, 2010 WL 11681653, at *3 (N.D. Ohio June 11, 2010) (noting, when plaintiff alleges discrimination under Ohio Revised Code § 4112.02, "only the 'decision maker' of the adverse employment action is liable") (citing *Jones v. Kilbourne Med. Labs.*, 162 F. Supp. 2d 813, 830 (S.D. Ohio 2000)).

18. Samani played no role whatsoever in determining the "commission" percentage about which Plaintiff complains, nor did she play a role in his voluntary resignation. (**Exhibit A** ¶¶ 4-5.) Specifically, Plaintiff was paid an "incentive" pursuant to an Incentive Pay Plan that PNC established. (**Exhibit A** ¶ 4.) Such plans were not developed, implemented, revised, or enforced by Branch Managers like Samani, and Samani had nothing whatsoever to do with the incentive paid pursuant to the applicable Incentive Pay Plan. (**Exhibit A** ¶ 4.) Moreover, Plaintiff voluntarily resigned and was not pressured or required to leave his employment with PNC. (**Exhibit A** ¶ 5.)

19. Accordingly, Samani cannot be held liable for "aiding and abetting." *See Nag v. Ohio State Univ.*, No. 2:20-CV-3471, 2021 WL 4306095, at *4 (S.D. Ohio Sept. 22, 2021)

7

(observing, "[t]o be liable for aiding and abetting, the defendant 'must be involved in or actually have made the decision to discriminate against the employee'"); *cf. Nunley v. Argos Health, Inc.*, No. 5:21-CV-01134, 2022 WL 580757, at *2 (N.D. Ohio Feb. 25, 2022) (distinguishable here because complaint contained multiple specific allegations that supervisor personally targeted him due to race, punished him for actions for which non-protected individuals were not punished, and that supervisor terminated his employment).

20. In his Complaint, Plaintiff alleges only on "information and belief" that Samani "was an individual responsible for, and/or who participated in" the alleged pay discrimination. Plaintiff's vague, conclusory, and unsworn statements cannot override Samani's sworn Declaration that she had nothing whatsoever to do with Plaintiff's incentive pay, paid pursuant to PNC's Incentive Pay Plan, or Plaintiff's voluntary resignation. The "lack of factual allegations regarding [Samani, the non-diverse party] provides no more than labels and conclusions insufficient to sustain viability of the legal claims." *See Murray Energy Holdings Co. v. Bloomberg, L.P.*, No. 2:15-CV-2845, 2016 WL 3355456, at *5 (S.D. Ohio June 17, 2016) (denying remand motion despite plaintiff's conclusory statements in complaint after finding plaintiff stated no colorable claim for misappropriation of trade secrets) (quoting *Beavers v. DePuy Orthopaedics, Inc.*, No. 1:11-dp-20275, 2012 WL 1945603, at *5 (N.D. Ohio May 30, 2012)). Plaintiff's generalized and conclusory statements are proven false by the undisputed facts in Samani's declaration.

21. Simply put, for the foregoing reasons, Plaintiff joined Samani as a sham defendant exclusively to avoid diversity jurisdiction. Consequently, Samani is improperly joined and complete diversity exists.

**II.     The Amount in Controversy Exceeds $75,000.**

22.     As the removing party, Defendants bear the burden of proving by a preponderance of the evidence that the amount in controversy requirement for the exercise of diversity jurisdiction has been met. *See Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001).

23.     In determining whether the amount in controversy requirement for diversity jurisdiction is satisfied, "the amount claimed by a plaintiff in good faith controls unless it appears to a legal certainty that the claim is for less than the jurisdictional amount or unless the amount claimed is merely colorable." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938).

24.     Plaintiff alleges in support of each of his three claims that he "has been and continues to be damaged in an amount to be determined at trial but exceeding $25,000." (Complaint ¶¶ 22, 29, 36.) Plaintiff also states that he demands: (a) economic compensatory damages; (b) non-economic compensatory damages; (c) liquidated, treble, punitive, or other exemplary damages; (d) reinstatement or front pay; (e) reasonable attorneys' fees; (f) costs and expenses; and (g) pre- and post-judgment interest. (Complaint § VI.) However, Plaintiff fails to specify the exact or maximum amount of damages he seeks or provide any calculation of his alleged damages.

25.     In assessing whether the amount in controversy requirement is satisfied here, the Court must determine: (a) the proper measure of the amount in controversy; and (b) whether Defendants have carried their burden to demonstrate by a preponderance of the evidence that the amount in controversy exceeds $75,000. *See Crooks v. State Farm Mut. Auto. Ins. Co.*, Case No. 2:15-CV-2234, 2015 WL 8602519, at *3 (S.D. Ohio Dec. 14, 2015) (denying motion for remand based on Complaint and "[d]efendants' evidentiary submissions").

26. Although Defendants deny that Plaintiff is entitled to any relief whatsoever, his allegations satisfy the $75,000 jurisdictional amount in controversy threshold based on his potential to recover back pay and other economic compensatory damages, non-economic compensatory damages, front pay, punitive damages, and attorneys' fees in this action.

27. **Back Pay.** "It is appropriate to consider back pay beyond the time of removal when a plaintiff seeks an award for back pay that includes future accruals." *See Shupe v. Asplundh Tree Expert Co.*, 566 F. App'x 476, 479 (6th Cir. 2014). Plaintiff's alleged "economic damages" potentially include both the alleged incentive pay differential and his total pay loss beginning with the voluntary resignation he characterizes as a "constructive discharge." Plaintiff's annualized salary when he resigned on August 24, 2021 was $39,373. (**Exhibit G**.) If Plaintiff's claimed lost salary alone was calculated from his resignation date through trial, which would likely not take place for at least a year from the filing of this suit, the amount of salary-based back pay in controversy equals approximately $78,746.

28. **Attorneys' Fees.** Additionally, under the OCRA, a prevailing plaintiff may recover reasonable attorneys' fees. *See* R.C. § 4112.14(B). In the Sixth Circuit, statutorily authorized attorneys' fees may be included in calculating the amount in controversy for purposes of removal. *See Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 377 (6th Cir. 2007). It is reasonable to expect that Plaintiff's attorneys' fees through trial could exceed $75,000 in this case.

29. Based on Plaintiff's demand for back pay and attorneys' fees alone, Defendants have satisfied their burden to demonstrate by a preponderance of the evidence that the amount in controversy is satisfied. Without even considering Plaintiff's other forms of alleged damages, his potential back pay is at least $78,746 and his likely attorneys' fees through the time of trial will

10

exceed $75,000, for a total of $153,746. Accordingly, Plaintiff's claimed damages in this case easily exceed $75,000.[4]

## CONCLUSION

30. Because this action is between citizens of different states and the amount in controversy clearly exceeds $75,000, exclusive of interest and costs, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). Accordingly, this action is removable to this Court pursuant to 28 U.S.C. § 1441(a).

31. Because this action is pending in the Franklin County Court of Common Pleas, General Division, venue for purposes of removal is proper in this Court pursuant to 28 U.S.C. § 1441(a).

32. Prompt written notice of this Notice of Removal is being sent to Plaintiff through his counsel and to the Clerk of the Court for the Franklin County Court of Common Pleas, General Division, as required by 28 U.S.C. § 1446(d). (**Exhibit H**.)

33. The undersigned has read this Notice of Removal, and to the best of the undersigned's knowledge, information and belief, formed after reasonable inquiry, certifies that Defendants' factual allegations have evidentiary support and their legal contentions are warranted by existing law. The undersigned also certifies that this Notice of Removal is not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.

---

[4] Again, Defendants provide this information merely as an estimate of the potential amount in controversy based on the allegations in Plaintiff's Complaint. Defendants reserve the right to contest Plaintiff's claim to any and all damages, as well as the reasonableness of his attorneys' fees.

DATED: September 1, 2022        Respectfully submitted,

                                         PNC BANK, N.A. and FRANKLINA SAMANI

                                         By: /s/ *Jennifer L. Whitney*
                                                Jennifer L. Whitney

Jennifer L. Whitney
Ohio Bar No. 71373
jwhitney@seyfarth.com

SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
Telephone:   (312) 460-5000
Facsimile:     (312) 460-7000

Attorneys for Defendants

## **CERTIFICATE OF SERVICE**

I certify that on September 1, 2022, I served a true and correct copy of this ***Defendants' Notice of Removal*** by first class U.S. mail, proper postage prepaid, on the following attorney of record:

Jason E. Starling
Kevin R. Kelleher
Willis Spangler Starling
4635 Trueman Boulevard, Suite 100
Hilliard, Ohio 43026

/s/ *Jennifer L. Whitney*
Jennifer L. Whitney